Filed 3/23/16  In re Saul Brandman Revocable Trust CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re SAUL BRANDMAN REVOCABLE TRUST and JOYCE O'DONNELL BRANDMAN MARITAL TRUST. | B260724 (Los Angeles County Super. Ct. No. BP156483) |
| BARRY GOLDFARB et al., Petitioners and Respondents, v. STEVEN GORDON, Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Reversed and remanded with directions.

Loeb & Loeb, Andrew S. Clare, Robert J. Catalano for Objector and Appellant.

Reed Smith, Bernard P. Simons, Zareh A. Jaltorossian for Petitioners and Respondents.

_____

Steven Gordon appeals from the probate court's order granting a petition filed by Barry Goldfarb, Kenneth A. Goldman and Steve Massman (collectively, Trustees) as trustees of the Saul Brandman Revocable Trust (the Brandman Trust) and the Joyce O'Donnell Brandman Marital Trust to modify the Brandman Trust to qualify as a tax-exempt charitable trust. Gordon contends the probate court erred in granting the contested petition without allowing an evidentiary hearing. We agree with Gordon and reverse.

## BACKGROUND

Saul Brandman (who is deceased) and appellant Gordon were business partners. In 1969, they cofounded Domino Realty Management, Inc. (Domino), a real estate management and investment company that manages 21 California limited liability companies and limited partnerships (the Domino Entities).

On July 20, 1987, Brandman established the Brandman Trust. He was the sole trustee of the revocable trust. Brandman's interests in the Domino Entities were transferred to the Brandman Trust. When Brandman died on May 27, 2008, the Brandman Trust became irrevocable and Trustees assumed their duties under the trusts.

According to the terms of the Brandman Trust, upon Brandman's death, certain trust assets were to be distributed as specific bequests to family and friends. The residue of the Brandman Trust was to be distributed to the Saul Brandman Foundation (the Foundation), a California nonprofit public benefit corporation. The members of the Foundation's board of directors are Joyce Brandman (Brandman's widow), Goldfarb (respondent Trustee), and Massman (respondent Trustee).

Appellant Gordon, the principal of Domino, maintains that the agreements governing the Domino Entities (which pre-date Brandman's death) give him the authority to withhold consent to the transfer of the Brandman Trust's interests in the Domino Entities to the Foundation. He has withheld his consent to the transfer.

In response to Gordon's rejection of the transfer, Trustees, Ms. Brandman, and a majority of the board of directors of the Foundation reached an agreement to modify the Brandman Trust to qualify as a tax-exempt charitable trust under Internal Revenue Code

2

section 501(c)(3). The Brandman Trust's interests in the Domino Entities would remain in the trust. According to Trustees, as stated in respondents' brief, "there will be significant tax savings as to the remaining interests if the Brandman Trust is modified into a charitable trust," which "will result in a substantial benefit to the downstream charities."

In October 2014, Trustees filed the verified petition that is at issue on appeal. In the petition, Trustees sought (1) modification of the Brandman Trust to qualify as a tax-exempt charitable trust, (2) a change of trustees of both the Brandman Trust and the Joyce O'Donnell Brandman Marital Trust, (3) approval of the settlement agreement between Trustees and Joyce Brandman, (4) approval of the first account current and report of Trustees for both trusts, (5) approval of disbursements and distributions, and (6) the discharge of Trustees.

Gordon filed a verified response and objections to the petition, requesting the probate court deny the petition in its entirety. Therein he argued, among other things:

(1) "Converting the Brandman Trust to the Foundation Trust would violate carefully crafted language in the agreements governing [Gordon]'s and Mr. Brandman's businesses [the Domino Entities] that restricts the transfer of the businesses to other entities such as the Foundation without the survivor of [Gordon]'s and Mr. Brandman's consent, just as transferring these businesses to the Foundation would have done."

(2) Gordon "and the Foundation Trust would have conflicting interests as co-owners of, and partners in, the [Domino Entities]. As just one example, the tax-exempt entity would be incentivized to avoid unrelated business taxable income, the avoidance of which may conflict with the goals of the other non-tax exempt members of the [Domino Entities], such as [Gordon]."

(3) "[M]odification of the Brandman Trust is something that Mr. Brandman explicitly sought to enjoin, with the consequence being potential disinheritance. One needs look no further than the no-contest clause in the Brandman Trust to see that the filing of '[a] petition for settlement or for compromise affecting the terms of this instrument' is to be deemed a contest."

3

(4) The "greed" of the proposed trustees (respondent Goldman, respondent Goldfarb, Ms. Brandman, and two others to be chosen by the mediator who facilitated the settlement) was the motivation for the modification, as the settlement agreement provides the new trustees will vote on their own compensation.

(5) Trustees "seek to bypass Mr. Brandman's carefully planned succession plan for the trustees of the Trust" and "instead appoint Mrs. Brandman (whom Mr. Brandman explicitly did not include in his succession plan) and two other persons (who appear to be strangers to the Trust)."

Lester Warshaw, who is not an appellant, also filed an objection to the petition on the ground that he is named as a successor trustee in the Brandman Trust, but not in the proposed modification to the trust.

The California Attorney General filed a response to the petition stating, "In the event the petition is granted, the Attorney General's Office reserves all of its rights and responsibilities to supervise the Saul Brandman Foundation Charitable Trust including the use and distribution of charitable assets, self-dealing transactions and trustee compensation."

On November 26, 2014, the probate court held a hearing on the petition. At the outset, the court asked the parties, "Do you need an evidentiary hearing at all on this?" Trustee's counsel responded first, asking the court to decide the petition on the documents as a matter of law. Gordon's counsel responded: "And we believe an evidentiary dispute is clearly called for, given the basis for the request for modification with regard to both the purpose of the trust, the interpretation of the transfer provision, the successor trustees' position, and we believe that those issues need to be resolved, and discovery is required, Your Honor."

The probate court then asked Gordon's counsel, "Give me what you would put on at such an evidentiary hearing." Counsel responded: "We would put on evidence to the extent to which Mr. Brandman's intent was that this trust would not be modified. We would put on evidence that it was his intent and the reason the trust was drafted the way it was with no contest clauses and the like, which specifically states that if a modification of

4

this type comes before this court, the no contest clause is invoked. Whether it's enforceable or not, I'm not speaking to that. I'm speaking to the purpose of the trust, and the purpose of the trust was to make sure that there would be a buy-sell of some type between Mr. Brandman and Mr. Gordon, and that that was a two-way situation, and that we need evidence and that needs to be presented. Also the successor trustees who knew Mr. Brandman very well would speak to their interest and the importance of their continuing as trustees, Your Honor."

In response, Trustees' counsel argued the petition on the merits, including the following arguments: "Mr. Gordon, as a nonbeneficiary, as a nontrustee, as a noninterested party is simply trying to thwart Mr. Brandman's intent of benefitting charities to the tune of over $200 million by trying to thwart this and trying to buy the assets [at] a discount. There is no buy-sell in any document before the court. Trust is very clear. Charities are to benefit. The Foundation was to receive the residue and distribute it to charities. Mr. Gordon has thwarted that." Trustee's counsel touted the alleged tax savings to the Brandman Trust's interests under the proposed modification.

Gordon's counsel further argued: "I think counsel's comments . . . highlights the fact that there are factual disputes. I would also add that millions and millions of dollars have been distributed from the real estate assets to the trust. This has been going on for eight years. There is no evidence, no accountants, no nothing as to these tax issues, and I think we can get this discovery done quickly. We can have it resolved quickly, and there are factual disputes, and I think we're entitled to have those matters heard on an evidentiary hearing."

After further argument by the parties, the court told Gordon's counsel, "I still haven't heard . . . what your offer of proof is, of what you would put on at an evidentiary hearing, other than the purpose of the trust." Gordon's counsel responded: "We would put on three things. We would put on, one, that the fact that these trustees -- the trustees are changing . . . is evidence of a modification of a trust being a transfer. We would put on the fact that the charitable trust creates very serious operating problems for our [client] because he has to deal now with the charity and all of the issues associated with the

5

charity, including mandatory distributions, including the ability to make capital calls, and including all of the reporting and everything associated with having a charity as a partner. All of the L.L.C. documents -- [¶] . . . [¶] And the third is that it was clearly the intent of the decedent that while there's no buy-sell, that either the survivor continues to own and control or a transaction is worked out between the two of them. [¶] We would also [put] on evidence to the effect that given the restrictions, if it gets down to this, in the L.L.C. agreements that the notion of having a transaction involving a charity is very, very difficult and will create all kinds of operating problems and difficulties for this enterprise. [¶] But in the end, the basic issue in the case is, the language in the L.L.C. agreements and the purpose of that language and the efforts by the trustees and the trust to circumvent that through a modification that is not -- there's no reason for it. It's not necessary, and the money is being distributed on a regular and recurring basis by the commercial enterprise to the trust. And that's what the evidence would show, and we think we're entitled to a hearing on that."

Trustee's counsel argued Gordon's offer of proof was "nonsense" on the merits and was "not relevant at all to Mr. Brandman's intent."

The probate court took the matter under submission. On December 22, 2014, the court issued an order granting the petition without holding an evidentiary hearing.

## DISCUSSION

Gordon's sole contention on appeal is the probate court erred in granting the petition without allowing an evidentiary hearing. Gordon cites Probate Code section 1022 which provides, "An affidavit or verified petition shall be received as evidence when offered in an *uncontested* proceeding under [the Probate Code]." (Italics added.) The Probate Code does not include a provision "authorizing the substitution of affidavits for oral evidence in a *contested* probate proceeding." (*Estate of Fraysher* (1956) 47 Cal.2d 131, 135, italics added.) "Thus when challenged in a lower court, affidavits and verified petitions may not be considered as evidence at a contested probate hearing." (*Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620.)

6

The Trustees point out a party may forfeit his or her right to an evidentiary hearing. "[W]here the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal." (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1088.) The appellate court in *Estate of Nicholas*, *supra*, 177 Cal.App.3d at page 1088 explained, "The trustee's petition and [the objector]'s written objections were both verified in the form of declarations under penalty of perjury. [Citation.] Absent an objection, these documents were properly considered as evidence."

The relevant cases do not set forth the appropriate standard for review of a probate court's denial of an evidentiary hearing when granting a petition. Gordon argues the standard is de novo. Trustees argue it is abuse of discretion. Under any standard, we conclude the probate court erred.

The probate proceeding at issue here was contested. Gordon requested an evidentiary hearing. He made clear he wanted to support his written response and objections to the petition with evidence. He did not forfeit his right to an evidentiary hearing. The fact Gordon did not specifically cite Probate Code section 1022 in his objections or arguments to the probate court does not mean he forfeited his right to an evidentiary hearing under the statute and case law interpreting it. He unequivocally objected to the probate court deciding the matter on the papers without an evidentiary hearing. He did not know his request for an evidentiary hearing had been denied—and that he would have no further opportunity to present evidence or argue his case—until he received the probate court's order granting the petition on the merits.

The Trustees also argue Gordon is not entitled to an evidentiary hearing because he did not make a sufficient offer of proof demonstrating there were factual disputes the probate court needed to resolve. In his response and objections, Gordon disputed there were "changed circumstances" warranting modification of the irrevocable Brandman

7

Trust, as Trustees claimed in their verified petition.[1] Gordon also disputed there was an evidentiary basis for Trustees' claim in the petition that the modification would lead to substantial tax benefits for the Brandman Trust's interests in the Domino Entities—the purported reason for the proposed modification. Gordon further disputed there was a reason for altering Brandman's succession plan for the trustees of the trust. Gordon also sought to present evidence demonstrating the proposed modification of the Brandman Trust would interfere with the management of the Domino Entities, a result Gordon argues Brandman would have opposed.[2]

In respondents' brief and at oral argument, Trustees relied on *McMillian v. Stroud* (2008) 166 Cal.App.4th 692 (*McMillian*), and asserted that case involves a similar factual scenario to the one before us supporting the probate court's decision to deny Gordon an evidentiary hearing. The facts in *McMillian*, however, differ significantly from the case before us in a key respect. There, the appellant (a minor, through his guardian ad litem/trustee of his special needs trust) did not request an evidentiary hearing in his motion to reduce a Medi-Cal lien or at the hearing on the motion. (*Id*. at p. 704.) For the first time on appeal, the appellant objected to the probate court resolving the motion without an evidentiary hearing. The appellate court considered the appellant's arguments at the hearing before the probate court, "viewed [those arguments] as an offer of proof,"

---

[1] Under Probate Code section 15409, subdivision (a), "On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust. In this case, if necessary to carry out the purposes of the trust, the court may order the trustee to do acts that are not authorized or are forbidden by the trust instrument."

[2] Under Probate Code section 15403, subdivision (b), "If the continuance of the trust is necessary to carry out a material purpose of the trust, the trust cannot be modified or terminated unless the court, in its discretion, determines that the reason for doing so under the circumstances outweighs the interest in accomplishing a material purpose of the trust." Gordon sought to present evidence indicating the proposed modification would thwart the purposes of the Brandman Trust.

8

and determined the probate court did not err in "conclud[ing] that the pending lien should be resolved on the basis of the declarations alone." (*Id*. at pp. 704-705.)

Here, Trustees mischaracterize the facts and conclusions in *McMillian*. Trustees stated in respondents' brief that the Court of Appeal in *McMillian* rejected the appellant's contention the probate court erred in deciding the motion without an evidentiary hearing because, "*although he [the appellant in McMillian] requested an evidentiary hearing at the hearing on the petition*, he failed to make a proper offer of proof." (Italics added.) As the opinion in *McMillian* makes clear, the appellant in *McMillian* never asked the probate court to hold an evidentiary hearing. (*McMillian*, *supra*, 166 Cal.App.4th at pp. 704-705 ["Here, appellants' motion never refers to an evidentiary hearing. At the hearing on the motion, Attorney O'Brien did not ask for an evidentiary hearing on the settlement, and argued only that John A. Girardi, appellants' prior counsel, was privy to the facts regarding the settlement. For the reasons explained above, Girardi's statements at the hearing, viewed as an offer of proof, do not show that he would have testified that the portion of settlement reflecting medical payments was less than $83,837.43"].) In the case before this court, in contrast, Gordon's attorney requested an evidentiary hearing at the outset of the hearing on the petition, devoting his oral argument to the reasons the petition was contested and his entitlement to an evidentiary hearing. Trustees' assertion Gordon forfeited his right to an evidentiary hearing is without merit.

We express no opinion on the merits of this contested proceeding or the likelihood of Gordon proving his case. We merely hold that Gordon was entitled to an evidentiary hearing in this contested proceeding and the court erred in rejecting his request for one. Accordingly, we reverse the order and direct the probate court to hold an evidentiary hearing on Trustees' petition.

9

**DISPOSITION**

The order is reversed and the matter is remanded for an evidentiary hearing on Trustees' petition. Gordon is entitled to recover costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:



JOHNSON, J.



LUI, J.


10